JOSEPHINE BINETTI McPEAK
Nevada Bar No. 7994
McDONALD CARANO WILSON LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV 89102
Telephone: (702) 873-4100
Facsimile: (702) 873-9966
Email: jmcpeak@mcdonaldcarano.com

MICHAEL B. BROWN
Nevada Bar No. 6577
BRIAN C. PARK (*pro hac vice forms will be filed*)
JAMES M. SHORE (*pro hac vice forms will be filed*)
STOEL RIVES LLP
600 University St., Suite 3600
Seattle, WA 98101
Tel. (206) 386-7542
Fax (206) 386-7500
Email: mbbrown@stoel.com
       bcpark@stoel.com
       jmshore@stoel.com

*Attorneys for Plaintiff ITEX Corporation*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| ITEX CORPORATION, a Nevada corporation, <br><br> Plaintiff, <br><br> v. <br><br> GLOBAL LINKS CORP., a Nevada corporation, and BXI TRADE EXCHANGE, INC., a Nevada corporation, <br><br> Defendants. | Case No.: <br><br> **COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff ITEX Corporation ("Plaintiff" or "ITEX") alleges for its Complaint against Global Links Corp. ("GLC") and BXI Trade Exchange ("BTE") (collectively, "Defendants"), as follows.

## THE PARTIES

1. Plaintiff ITEX is a Nevada corporation with a principal place of business in Bellevue, Washington. ITEX is in the commercial transactions barter exchange business.

2. Defendant GLC is a corporation organized and existing under the laws of the State of Nevada and has a place of business at 3571 E. Sunset Road, #102, Las Vegas, NV 89120.

3. Defendant BTI is a corporation organized and existing under the laws of the State of Nevada and has a place of business at 3571 E. Sunset Road, #102, Las Vegas, NV 89120.

## JURISDICTION AND VENUE

4. This action arises under the United States Lanham Act, 15 U.S.C. § 1051, *et seq.*; Nevada Revised Statute 598.0915; and the common law.

5. The Court has original jurisdiction over Plaintiff's Lanham Act claims pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b). The Court has supplemental jurisdiction over Plaintiff's state and common law claims under 28 U.S.C. § 1367(a), as such claims form part of the same case or controversy under Article III of the United States Constitution.

6. Venue and personal jurisdiction properly exist in this judicial district under 28 U.S.C. § 1391(b) and (c) as all Defendants have business operations in Nevada, in connection with which they have committed the violations of law complained of herein in Nevada with resulting harm to Plaintiff in, *inter alia*, Nevada. Further substantial acts, events, and omissions giving rise to the claims set forth herein occurred in this judicial district.

## PLAINTIFF AND ITS RIGHTS

7. ITEX has been in the commercial transactions barter exchange business, directly and through its predecessors-in-interest, for more than 30 years.

8. ITEX, directly and through its predecessors-in-interest, licensees, and franchisees, has expended considerable effort, expense, and resources in the promotion of its barter exchange business, through the use of the **"BXI"** word trademark and the "BXI circular arrow" logo trademark shown below (collectively "Plaintiff's Trademarks" or "the ITEX Trademarks").



9. The United States Patent and Trademark Office previously recognized the validity and enforceability of the ITEX Trademarks through U.S. Trademark Reg. No. 78,245,385 dated May 11, 2004.

10. At all relevant times, ITEX has been the sole owner of all right, title, and interest in the ITEX Trademarks and the registration and common law rights therein, including through the acquisition of and merger with the company known as BXI Exchange, Inc. ("BXI"). At the time ITEX acquired BXI, BXI was the original barter exchange company and had been the largest barter exchange in the world. ITEX purchased BXI in the 1990s and, again, in 2005 for valuable consideration acquiring, *inter alia*, all right, title, and interest in the ITEX Trademarks. After spinning off BXI in 2000, ITEX repurchased BXI in 2005, again specifically including all right, title, and interest in the ITEX Trademarks, and then merged BXI into ITEX.

11. ITEX, directly and through its predecessors-in-interest, licensees, and franchisees, has, since at least as early as 1987, adopted and used the ITEX Trademarks continually in interstate commerce in the United States as a trademark in connection with Plaintiff's commercial transactions barter exchange business. ITEX's continual use of the ITEX Trademarks in interstate commerce includes marketing under the ITEX Trademarks through ITEX's network of licensees, franchisees, and brokers; advertising and correspondence through web sites, domain names, social media, and e-mail addresses bearing the ITEX Trademarks; use of the ITEX Trademarks through banners and signage at trade shows; use of the ITEX Trademarks through print advertising, décor, commercial documentation, and trade dress; use of the ITEX Trademarks in in-person and word of mouth marketing activities and other forms of promotion; and other forms of marketing and promotion of ITEX's business under the ITEX Trademarks.

12. ITEX, directly and through its predecessors-in-interest, licensees, and franchisees, has also expended substantial sums of time, money, and effort in marketing, promoting, and popularizing the ITEX Trademarks in interstate commerce throughout the United States. All use of the ITEX Trademarks by ITEX's licensees and franchisees inures to the benefit of ITEX along with all good will associated with such use.

. . .

13. As a result of Plaintiff's extensive use, marketing, and promotion, the ITEX Trademarks are well known among businesses and consumers in Nevada and the United States and those marks are recognized as identifying ITEX and its goods and services. The ITEX Trademarks and good will associated therewith are valuable assets of ITEX and the use thereof has never been discontinued or abandoned by ITEX.

**DEFENDANTS AND THEIR UNLAWFUL ACTIVITIES**

14. In 2012, Defendants adopted the trademark "BXI," both in word and logo form, to promote a new company, "BXI <u>Trade</u> Exchange" (emphasis added), they were forming. Defendants' new company, BTE, did not exist or have any operations before 2012. As between Plaintiff and Defendants, Plaintiff was the first entity to use the ITEX Trademarks in interstate commerce.

15. Defendants have used the ITEX Trademarks, without authorization, license or permission from ITEX, to market Defendants' new company and to lure those with existing ITEX contracts and business relationships — including ITEX franchisees, brokers, and members — away from ITEX.

16. As part of Defendants' competitive strategy against ITEX, Defendants have also been making false and misleading advertising statements in the marketing and promotion of their new company (BTE), since at least 2013, through Defendants' web sites *http://globallinkscorp. com* and *www.bxitrade.net*; BTE's web page *http://globallinkscorp.com/home/bxi-tradeexchange*; multiple Facebook pages including *https://www.facebook.com/bxitrade;* press releases; and printed, e-mail, and word-of-mouth marketing — directly and through their authorized agents — all of which are issued and controlled by Defendants' president, Frank Dobrucki, and treasurer, Saul Yarmak. Defendants have made and caused to be made, *inter alia*, the following advertising and publicity statements in interstate commerce, which attribute BXI's past, present, or future offices, members, history, and success to BTE or GLC in a false and misleading manner:

(A) Defendants refer to BTE as "The Original Barter Company." and other statements to that effect. These are false and misleading statements — BTE was never "the original

1  barter company" (it did not exist prior to 2012) — intended to cause confusion between BTE and BXI, which ITEX acquired.

(B) Defendants refer to BTE as "BXI, formerly the world's largest barter trade exchange, will soon be fully operational with plans to once again become the premier marketplace for the barter industry." and other statements to that effect. These are false and misleading statements — BTE is not BXI and was never the world's largest barter trade exchange (it did not exist prior to 2012) — intended to cause confusion between BTE and BXI, which ITEX acquired.

(C) Defendants state "BXI ... announcing its reopening." and other statements to that effect. These are false and misleading statements — BTE is not BXI; BTE is a new company that never opened before and did not exist prior to 2012 — intended to cause confusion between BTE and BXI, which ITEX acquired.

(D) Defendants state "We expect BXI to quickly become the largest barter exchange company as it once was by realizing rapid growth" and other statements to that effect. These are false and misleading statements — the company Defendants refer to, BTE, was never the largest barter exchange company (it did not exist prior to 2012) — intended to cause confusion between BTE and BXI, which ITEX acquired.

(E) Defendants state "BXI is back in business." and other statements to that effect. These are false and misleading statements — BTE was never in business prior to 2013 (it did not exist prior to 2012), much less close and then reopen for business — intended to cause confusion between BTE and BXI, which ITEX acquired.

(F) Defendants state "BXI, formerly the world's largest barter trade exchange, will soon be fully operational with plans to once again become the premier marketplace for the barter industry. Saul Yarmak, will resume his position as Chairman and is committed to once again be a driving force in the day-to-day operations of the exchange." and other statements to that effect. These are false and misleading statements — the company Defendants refer to, BTE, was never the premier marketplace for the barter industry (it did not exist prior to 2012) and Mr. Yarmak was never before the chairman of BTE (as opposed to the company ITEX acquired) — intended to cause confusion between BTE and BXI, which ITEX acquired.

  (G) Defendants state "The company's stated intention is to quickly make BXI the recognized 'Gold-Standard' of the barter industry while maintaining the highest level of ethics and reputation. At its peak, prior to the widespread use of the Internet, BXI had more than 22,000 business members" and other statements to that effect. These are false and misleading statements — the company Defendants refer to, BTE, never had more than 22,000 business members (it did not exist prior to 2012) and it has not maintained the highest level of ethics and reputation (as set forth herein) intended to cause confusion between BTE and BXI, which ITEX acquired.

  (H) Defendants describe the corporate history of BXI (the company ITEX acquired) as a means to promote their new company, BTE, without informing the recipients of Defendants' marketing statements that BTE is a new company formed in 2012 that has never had any relationship to BXI. Defendants specifically connect BXI's history with BTE by, *inter alia*, stating "BXI's come back will once again make them the largest barter company in the nation" and other statements to that effect. These are false and misleading statements — the company Defendants refer to, BTE, was never the largest barter company in the nation (it did not exist prior to 2012) — intended to cause confusion between BTE and BXI, which ITEX acquired.

  17. The foregoing statements by Defendants are both false and misleading. Defendants' new company, BTE, did not exist or have any operations before 2012 and 2013, respectively. Nor did BTE achieve the fame or good will achieved by BXI. On information and belief, Defendants have made other, similar false and misleading advertising statements to promote the formation and operation of BTE and to cause confusion in the marketplace between BTE and BXI. On information and belief, such actual confusion has already occurred.

  18. On October 31, 2013, ITEX sent GLC and BTE a cease and desist letter (a true and correct copy of which is attached hereto as **Exhibit 1** and incorporated by reference herein), demanding that Defendants stop all use of the ITEX Trademarks and any false or misleading advertising. Defendants responded via letter on November 11, 2013 (a true and correct copy of which is attached hereto as **Exhibit 2** and incorporated by reference herein) by denying any wrongdoing. At Defendants' suggestion, counsel for ITEX engaged in dialogue with Defendants' representative on November 21, 2013 and explained in detail ITEX's position. On November 22,

6

1  2013, ITEX sent GLC and BTE a second cease and desist letter (a true and correct copy of which is attached hereto as **Exhibit 3** and incorporated by reference herein), confirming the parties' discussion. To date, Defendants have not ceased or desisted any of their wrongful activities.

19. Defendants had notice at all relevant times of ITEX's senior use of the ITEX Trademarks and exclusive ownership of the rights asserted herein. On information and belief, Defendants had notice at all relevant times that Defendants' use of the ITEX Trademarks was likely to cause confusion, mistake, or deception regarding the affiliation, connection, or association between Plaintiff and Defendants and the origin, sponsorship, or approval by Plaintiff of Defendants' business and commercial activities.

20. Defendants' violations of Plaintiff's rights have been knowing and willful.

## FIRST CAUSE OF ACTION
### (FALSE DESIGNATION OF ORIGIN - 15 U.S.C. § 1125(a))

21. ITEX repeats and realleges each allegation above as though set forth fully herein.

22. Defendants' unauthorized use in commerce of the ITEX trademarks in connection with Defendants' directly competing barter exchange business constitutes a false designation of origin in violation of Section 43(a) of the Lanham Act.

23. Defendants' false designation of origin has been intended to cause, has been likely to cause, and has caused confusion, mistake, and/or deception regarding the affiliation, connection, or association between Plaintiff and Defendants and the origin, sponsorship, or approval by Plaintiff of Defendants' business and commercial activities, or *vice versa*.

24. Defendants knew, or should have known, of Plaintiff's rights, and Defendants' false designation of origin has been willful, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

25. Defendants' commercial activities have damaged, and will continue to damage, ITEX's market, reputation, and good will and may discourage current and potential brokers, franchisees, members, and customers from dealing with ITEX.

26. As a direct and proximate result of Defendants' false designation of origin, ITEX has been and will continue to be damaged in an amount to be proven at trial, in a manner and amount that

1  cannot be fully measured or compensated in economic terms, and for which there is no adequate
2  remedy at law. Such irreparable harm will continue unless and until Defendants' acts complained of
3  herein are enjoined during the pendency of this action and permanently thereafter.

## SECOND CAUSE OF ACTION
### (FALSE ADVERTISING - 15 U.S.C. § 1125(a))

27. ITEX repeats and realleges each allegation above as though set forth fully herein.

28. Defendants, by their conduct described above, intentionally have made and are making in interstate commerce materially false statements, including those set forth in paragraphs 16(A) - 16(H) above.

29. As the result of Defendants' false advertising statements described above, the public, including ITEX's current and potential brokers, franchisees, members, and customers, have been and are likely to be deceived such that they are likely not to do business with or through ITEX, to the same extent, if at all, as a result of Defendants' false advertising statements.

30. ITEX has been and is likely to be injured by direct diversion of business relationships and by a lessening of goodwill associated with ITEX as a result of Defendants' false advertising statements.

31. Defendants' actions as herein alleged constitute false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

32. Defendants' conduct as herein alleged has caused, and unless restrained and enjoined will continue to cause, irreparable harm to ITEX that cannot be adequately compensated or measured by money alone. ITEX has no adequate remedy at law. Pursuant to 15 U.S.C. § 1116, ITEX is entitled to preliminary and permanent injunctive relief preventing Defendants from continuing to engage in false advertising.

33. As a direct and proximate result of Defendants' wrongful conduct, ITEX has suffered and will continue to suffer damages in an amount that is presently unknown but that will be proven at trial. As a direct and proximate result of Defendants' wrongful conduct, Defendants have realized and will continue to realize profits, gains, and other advantages from their false advertising statements, all to the detriment of ITEX.

34. ITEX is entitled to recover actual damages and Defendants' wrongful profits, together with attorneys' fees and costs incurred in this action. Defendants' conduct as alleged herein constitutes a willful violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and is an exceptional case within the meaning of Section 35 of the Lanham Act, 15 U.S.C. § 1117.

### THIRD CAUSE OF ACTION
### (MISLEADING ADVERTISING - 15 U.S.C. § 1125(a))

35. ITEX repeats and realleges each allegation above as though set forth fully herein.

36. Defendants, by their conduct described above, intentionally have made and are making in interstate commerce materially misleading statements, including those set forth in paragraphs 16(A) - 16(H) above (to the extent certain statements are construed not to be literally false in light of Defendants' intentional and deceptive linguistic ambiguities).

37. As the result of Defendants' misleading advertising statements described above, the public, including ITEX's current and potential brokers, franchisees, members, and customers, have been and are likely to be deceived such that they are likely not to do business with or through ITEX, to the same extent, if at all, as a result of Defendants' misleading advertising statements.

38. ITEX has been and is likely to be injured by direct diversion of business relationships and by a lessening of goodwill associated with ITEX as a result of Defendants' misleading advertising statements.

39. Defendants' actions as herein alleged constitute misleading advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

40. Defendants' conduct as herein alleged has caused, and unless restrained and enjoined will continue to cause, irreparable harm to ITEX that cannot be adequately compensated or measured by money alone. ITEX has no adequate remedy at law. Pursuant to 15 U.S.C. § 1116, ITEX is entitled to preliminary and permanent injunctive relief preventing Defendants from continuing to engage in misleading advertising.

41. As a direct and proximate result of Defendants' wrongful conduct, ITEX has suffered and will continue to suffer damages in an amount that is presently unknown but that will be proven at trial. As a direct and proximate result of Defendants' wrongful conduct, Defendants have realized

and will continue to realize profits, gains, and other advantages from their misleading advertising statements, all to the detriment of ITEX.

42. ITEX is entitled to recover actual damages and Defendants' wrongful profits, together with attorneys' fees and costs incurred in this action. Defendants' conduct as alleged herein constitutes a willful violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and is an exceptional case within the meaning of Section 35 of the Lanham Act, 15 U.S.C. § 1117.

## FOURTH CAUSE OF ACTION
### (COMMON LAW TRADEMARK INFRINGEMENT)

43. ITEX repeats and realleges each allegation above as though set forth fully herein.

44. By virtue of having used and continuing to use the ITEX Trademarks, Plaintiff has acquired common law rights therein.

45. Defendants' unauthorized use of the ITEX Trademarks in connection with Defendants' directly competing barter exchange business infringes Plaintiff's common law trademark rights and is likely to cause confusion, mistake, or deception among brokers, franchisees, members, and customers, who will believe that Defendants' business and services originate from, are affiliated with, or are sponsored by ITEX or *vice versa* when, in fact, they are not and have never been.

46. Defendants' use of the ITEX Trademarks is likely to unfairly divert trade away from ITEX and to damage ITEX's goodwill, business, and reputation.

47. As a direct and proximate result of Defendants' infringement of common law trade dress rights, ITEX has been and will continue to be damaged in an amount to be proven at trial, in a manner and amount that cannot be fully quantified or compensated in economic terms, and for which there is no adequate remedy at law. Such irreparable harm will continue unless Defendants' acts complained of herein are enjoined during the pendency of this action and permanently thereafter.

## FIFTH CAUSE OF ACTION
### (NEVADA DECEPTIVE TRADE PRACTICES (NRS 598.0915))

48. ITEX repeats and realleges each allegation above as though set forth fully herein.

49. Defendants' unauthorized use of the ITEX trademarks constitutes an attempt to pass off Defendants' goods and services as those of Plaintiff or *vice versa*, in violation of NRS 598.0915.

50. Defendants' unauthorized use of materially false and misleading advertising constitutes a deceptive trade practice, in violation of NRS 598.0915.

51. Defendants' deceptive acts, as described herein, have been done with malice and conscious disregard for the purpose of oppression, and negatively impact the public interest in the proper and accurate identification of barter exchanges, through which goods and services are offered, accepted, and traded for value.

52. Defendants' actions have been willful, have been injurious to the public and the public interest in Nevada and in interstate commerce, and have harmed Plaintiff in violation of NRS 598.0915.

53. As a direct and proximate result of Defendants' passing off, ITEX has been and will continue to be damaged in an amount to be proven at trial, in a manner and amount that cannot be fully quantified or compensated in economic terms, and for which there is no adequate remedy at law. Such irreparable harm will continue unless Defendants' acts complained of herein are enjoined during the pendency of this action and permanently thereafter.

## PRAYER FOR RELIEF

WHEREFORE, ITEX prays for judgment as follows:

1. That Defendants, their affiliates, subsidiaries, agents, servants, employees, attorneys, and any and all persons in active concert, privity, or participation therewith be restrained and preliminarily and permanently enjoined from:

    A. infringing the ITEX trademarks (directly, contributorily, and vicariously);

    B. using any trademark identical or confusingly similar to the ITEX Trademarks or any other false designation of origin;

    C. passing off any trademark used by Defendants as Plaintiff's or *vice versa*; or

    D. using any false or misleading statement in promoting Defendants' business.

2. That monetary judgment be entered in favor of Plaintiff against Defendants, jointly and severally, including:

A. an accounting and disgorgement of all profits and property wrongfully made or obtained by Defendants, to be held in a constructive trust for the benefit of Plaintiff during the pendency of this action until the judgment is satisfied;

B. an award to Plaintiff of lost profits, actual damages, and punitive damages.

3. That the Court hold this case to be exceptional and that the damages be trebled as provided by governing law.

4. That Defendants be ordered to pay to Plaintiff the expenses of this action, including reasonable attorneys' fees, costs, and interest as provided by governing law.

5. That Defendants be ordered to recall and deliver to Plaintiff for impoundment all originals and copies of materials infringing the ITEX Trademarks; and that Defendants be directed to file with the Court and serve on Plaintiff a written report under oath setting forth the manner in which Defendants have complied with the Court's order.

6. That Plaintiff be awarded such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all issues so triable.

DATED this 13th day of January, 2014.

McDONALD CARANO WILSON LLP

By: *[signature]*
JOSEPHINE BINETTI McPEAK (#7994)
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV 89102
Telephone: (702) 873-4100
Facsimile: (702) 873-9966
Email: jmcpeak@mcdonaldcarano.com

STOEL RIVES LLP
Michael B. Brown (Nevada SBN 6577)
Brian C. Park (*pro hac vice forms will be filed*)
James M. Shore (*pro hac vice forms will be filed*)
600 University St., Suite 3600
Seattle, WA 98101
Tel. (206) 386-7542
Fax (206) 386-7500

*Attorneys for Plaintiff ITEX Corporation*

LVDOCS-#295778